UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


William Gilbert Snay

    v.                                  Civil No. 13-cv-316-JD
                                        Opinion No. 2014 DNH 134
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R

William Gilbert Snay seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying his application for disability insurance benefits and supplemental security income. In support, Snay contends that the Administrative Law Judge ("ALJ") erred in assessing his mental and physical residual functional capacity because of improper evaluations of the medical opinion evidence and an erroneous credibility determination. Snay moves to reverse and remand, and the Acting Commissioner moves to affirm.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background

The medical evidence shows that Snay was treated for back pain and mental health issues beginning before 2009. Dr. Laura G. Hancock, D.O., treated Snay's mental health issues and managed his medications. Dr. Joseph Martinez was Snay's primary care physician.

Dr. Jennifer Cutts, a radiologist, did an MRI of Snay's cervical spine in June of 2010. Based on the MRI, Dr. Cutts noted radiculopathy that caused neck pain with numbness and tingling in Snay's left arm. She also found multilevel disc and facet degenerative changes without any severe narrowing.

Dr. Hancock examined Snay in June, August, and September of 2010. She found that "he was doing okay," that his mood was relatively stable, that he had linear and goal-directed thought processes, at least average intelligence, fair to good judgment and insight, and intact concentration and memory. Dr. Hancock

assigned a GAF score of 55 in July and then 50 in August and September.[1]

On July 5, 2010, Leigh Haskell, Ph.D., a non-examining state agency consultant, reviewed Snay's medical records and completed a Psychiatric Review Technique form.  Dr. Haskell found that Snay was mildly limited in activities of daily living and social functioning and moderately limited in his ability to maintain concentration, persistence, or pace.  She also found that despite a depressive disorder he could understand, remember, and focus on simple tasks at a consistent pace in a normal work setting.

On July 20, 2010, Dr. Iver Nielson, a non-examining state agency physician, completed a physical residual functional capacity assessment of Snay based on his medical records.  Dr. Nielson found no medical evidence to support a severe physical impairment.

Snay was treated by Dr. Christine Munroe in July of 2010 for osteopathic manipulative therapy for back pain.  Dr. Munroe completed a physical residual functional capacity assessment of Snay on August 19, 2010.  Dr. Munroe noted chronic back pain with

---

[1] GAF is an abbreviation for global assessment of functioning and provides a means for mental health professionals "to turn raw medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." Gonzalez-Rodriguez v. Barnhart, 111 Fed. Appx. 23, 25 (1st Cir. 2004); see also American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000).  A GAF score between 41 and 50 indicates serious symptoms.  Stanley v. Colvin, 2014 WL 1767103, at *3 n.2 (D. Me. Apr. 29, 2014).  A GAF score of 51 to 60 represents moderate symptoms.  Jones v. Astrue, 2011 WL 1253891, at *3 n.4 (D. Me. Mar. 30, 2011).

3

associated numbness and weakness in arms and legs and with severe sharp pain requiring frequent changes of position.  She assessed that Snay could occasionally lift less than ten pounds and that his symptoms and treatment could cause him to be absent from work more than three times a month.

In a letter dated in September of 2010, Dr. Hancock wrote that she had treated Snay since April of 2009 for a major depressive disorder.  She stated that he had poor sleep, irritability, depressed mood, fair appetite, lack of motivation, and impaired concentration.  In her opinion, Snay was highly unlikely to be able to sustain significant employment.

In October of 2010, Snay received mental health treatment at Sweetser Outpatient Affiliate Services with Denise Hammond, a licensed clinical social worker.  Hammond found that Snay was oriented, attentive, and age appropriate in judgment and insight and that he had logical thought process and good impulse control.  She also found, however, that he had a guarded manner and impaired concentration.  Hammond diagnosed a major depressive disorder and a GAF score of 55.

Snay saw Dr. William Sutherland at Sports Medicine Atlantic Orthopedics in November of 2010.  Dr. Sutherland found that Snay could heel walk and toe walk well, that he had some mild diffuse tenderness in his back, and that straight leg testing was negative.  He noted that test results showed multilevel disc narrowing and joint arthropathy.  He recommended an epidural

4

steroid injection. Snay had steroid injections in January, which he tolerated well.

Hammond saw Snay in November of 2010 and noted his struggles with daily activities and depression. In January, Hammond wrote a letter to support Snay's application for social security benefits. She stated that Snay had constant pain, difficulty sleeping, and appeared to be depressed.

In February of 2011, Dr. Freidoon Malek, a state agency consultative physician, completed a residual functional capacity assessment. Dr. Malek found that Snay was capable of activities that would allow work at the light exertional level, although he was limited to only occasional overhead and frontal lifting.

In April of 2011, Snay was examined by a physician's assistant at Sports Medicine Orthopedics who found good forward flexion and toe and heel walking without deficit. Snay moved around the office well and also was able to walk his dog. The physician's assistant recommended continuing the conservative approach, including epidural injections. Dr. Munroe found no acute distress during an appointment that was also in April of 2011.

Dr. Sutherland examined Snay in July of 2011 to evaluate his neck and back pain. He found that Snay had some decreased range of motion in his neck but appeared to be well. Snay had an MRI of the cervical spine in September, which showed multilevel degenerative disc and degenerative facet disease. At his visit with Dr. Sutherland after the MRI, Snay reported that he was

taking five Vicodin a day for pain.  On examination, Dr. Sutherland noted that Snay appeared to be well and recommended continuing the conservative efforts.

During September, October, and November of 2011, Snay was treated at the Goodall Hospital Pain clinic.  He was assessed with chronic neck pain, degenerative disc disease, chronic low back pain, and myofascial pain.  He received a lumbar epidural steroid injection in October.  In December, Dr. Norris diagnosed cervicalgia with radiation into the left arm and recommended physical therapy.

Snay was examined by Dr. Douglas Buxton at the Neurosurgery and Spine Center for neck and back pain.  Dr. Buxton noted no acute distress, normal gait, and the ability to move from the examination table to a seated position without discomfort.  Testing results were normal, and Dr. Buxton found that Snay's pain symptoms and examination were relatively benign.  He found no indication for neurosurgical intervention and recommended that Snay follow up with his psychiatrist because depression could increase the perception of pain.

At a follow up appointment, Dr. Buxton again found that Snay was in no acute distress.  Testing results indicated some type of old cervical nerve injury but no active nerve damage.  Dr. Buxton thought it was likely a chronic nerve injury process.

Dr. Norris prescribed pain medication in February of 2012.  An MRI taken in February showed improvement in the size of a disc

bulge but otherwise was similar to past tests.  No severe narrowing was seen.

Dr. Hancock completed a mental impairment questionnaire on February 16, 2012.  She noted her diagnosis of major depressive disorder and chronic pain and assigned a GAF score of 45.  Dr. Hancock stated that Snay had mild restrictions in activities of daily living but had marked limitations in social functioning and in maintaining concentration, persistence, or pace.  She thought that Snay had diminished ability in various mental capacities needed to perform unskilled work and that his depression and chronic pain significantly impaired his concentration.  She noted that if Snay were employed, his symptoms would cause him to miss more than four days of work per month.

In March of 2012, Dr. Munroe completed a physical residual functional capacity assessment.  Dr. Munroe stated that Snay tolerated his medications without side effects but that he probably could not complete a normal work schedule consistently and that he would be absent from work more than four days each month.  She limited Snay to less than sedentary work.

A hearing was held on Snay's application on April 26, 2012.  Snay testified and a vocational expert testified.  The ALJ denied Snay's application in a decision issued on June 20, 2012.

The ALJ relied on the opinions provided by the state agency consultants, Leigh Haskell, Ph.D. and Dr. Freidoon Malek.  He gave little weight to the opinions provided by Dr. Hancock, Dr. Munroe, and LCSW Hammond.  The ALJ found that Snay retained the

residual functional capacity to do light work with some postural limitations. See 20 C.F.R. § 404.1567(b). Based on that assessment, the ALJ found that Snay would be able to do jobs that were recommended by the vocational expert.

## Discussion

Snay moves to reverse and remand the ALJ's decision. Snay contends that the ALJ erred in assessing his residual functional capacity because he improperly weighed the opinions of his treating sources and the state agency consultants and because the ALJ improperly assessed Snay's credibility as to the severity of his symptoms. The Acting Commissioner moves to affirm the ALJ's decision, asserting that substantial record evidence supports it.

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a).[2] The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled. § 404.1520. The claimant bears the burden, through the first four steps, of proving that his impairments preclude

---

[2]The Social Security Administration promulgated regulations governing eligibility for disability insurance benefits at Part 404 and for supplemental security income at Part 416. Because the regulations are substantially the same, the court will cite only to the disability insurance benefits regulations. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).

8

him from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner determines whether other work that the claimant can do, despite his impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding.  Seavey, 276 F.3d at 5.

A.  Weight Given to Medical Opinions

Snay argues that the ALJ improperly evaluated his treating source opinions and gave too much weight without good reasons to the state agency consultants' opinions.  The Acting Commissioner contends that the ALJ properly evaluated all of the medical opinions.

The ALJ attributes weight to a medical opinion based on factors including the nature of the relationship between the medical source and the applicant, the extent to which the opinion includes supporting information, the consistency of the opinion with the record as a whole, the specialization of the source, the source's understanding of the administrative process, and the source's familiarity with the applicant's record.  20 C.F.R. § 404.1527(d); see also SSR 96-2p, 1996 WL 374188 (July 2, 1996).[3]  A treating medical source is the applicant's own physician, psychiatrist, psychologist, or other acceptable medical source.  20 C.F.R. § 404.1502.  A treating source's

---

[3]SSR 96-2p is titled Policy Interpretation Ruling Titles II and XVI:  Giving Controlling Weight to Treating Source Medical Opinions.

opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(d).

Only acceptable medical sources can give medical opinions, can be considered treating sources, and can establish the existence of a medically determinable impairment. §§ 404.1502, 404.1513(a), & 404.15276(a)(2); see also SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006)[4]; Taylor v. Astrue, 899 F. Supp. 2d 83, 88 (D. Mass.2012). The ALJ, however, must assess the opinions of other health care providers, who are not acceptable sources, to determine the probative value of the opinion in the context of that case. Id. (citing SSR 06-3p).

Social Security Ruling 96-6p provides that state agency consultants' opinions

> can be given weight only insofar as they are supported
> by evidence in the case record, considering such
> factors as the supportability of the opinion in the
> evidence including any evidence received at the
> administrative law judge and Appeals Council levels
> that was not before the State agency, the consistency
> of the opinion with the record as a whole, including
> other medical opinions, and any explanation for the
> opinion provided by the . . . consultant.

SSR 96-6p, 1996 WL 374180, at *2. "[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including

---

[4]SSR 06-3p is titled Titles II and XVI:II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies.

10

the nature of the illness and the information provided the expert." Rose v. Shalala, 34 F.3d 12, 18 (1st Cir. 1994).  A state agency consultant's opinion that is based on an incomplete record, when later evidence supports the claimant's limitations, cannot provide substantial evidence to support the ALJ's decision to deny benefits.  See, e.g., Alcantara v. Astrue, 247 Fed. Appx. 333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 Fed. Appx. 19, 20 (1st Cir. 2006); Wenzel v. Astrue, 2679456, at *4 (D.N.H. July 6, 2012).

    1.   <u>Mental Health Opinions</u>

    Dr. Hancock, who provided medication management for Snay's psychiatric issues beginning in April of 2009, provided three opinions.  Dr. Hancock's first opinion, dated May 20, 2010, was cursory responses on a form in which she stated that Snay's physical and emotional symptoms precluded steady employment but also suggested that Snay was able to function in a work environment and that his mood and concentration were improving.  Her second opinion was provided in a letter dated September 2, 2010, in which Dr. Hancock stated that his symptoms of depression included impaired concentration but concluded that Snay was unable to sustain significant employment because of his level of physical impairment.  Dr. Hancock's third opinion, dated February 16, 2012, was provided in a seven-page mental impairment questionnaire, which followed almost two years of additional treatment.  Dr. Hancock's mental health evaluation was more

extensive and considerably more negative than her prior opinions, including findings of significant impairment of concentration and memory, that his diminished ability to do work-related activities would be apparent during most of a work day, that he would not be able to be punctual or to maintain a consistent pace, and that he would be absent more than four days each month.

LCSW Hammond also provided an opinion dated January 20, 2011.  Hammond stated that she had treated Snay on an outpatient basis for more than a year.  During that time, Snay had experienced constant pain, struggled with sleep, and appeared to be depressed as shown by his mood, lack of energy, and lack of concentration.  She thought that Snay would be working if he had the strength and stamina.

The state agency consultant, Leigh Haskell, completed a Psychiatric Review Technique and mental health residual functional capacity form on July 5, 2010.  Dr. Haskell specifically referred to Dr. Hancock's notes and opinions through May 20, 2010, and discussed Dr. Hancock's opinions that Snay could not work due to physical and emotional symptoms but that his depression and concentration were improving.  Dr. Haskell concluded that Snay was not significantly limited as to his ability to understand and remember, carry out short and simple instructions,[5] to make simple decisions, and to interact with the public and at work.  She found moderate limitations only as to

---

[5] Haskell found that Snay's ability to carry out detailed instructions was markedly limited.

his ability to complete a normal work day and work week, to respond appropriately to changes in the work environment, and to maintain concentration for extended periods.

The ALJ gave no weight to Dr. Hancock's first opinion, from May of 2010, because he interpreted her opinion to relate to Snay's physical impairments, when she was not his "physical treating physician," and because he thought her opinion was based solely on Snay's subjective complaints. The ALJ did not mention Dr. Hancock's letter from September of 2010. He gave Dr. Hancock's third opinion, the evaluation dated February 16, 2012, little weight because he found that the opinion was not supported by Dr. Hancock's treatment notes which he thought showed that Snay's concentration and attention were not impaired. The ALJ also gave little weight to Hammond's opinion because she had treated Snay for only three months at that time, she emphasized his physical symptoms, and she relied on his subjective complaints.

The ALJ gave great weight to Dr. Haskell's consultative opinion because "she reviewed the longitudinal medical record and determined the claimant had only mild functional limits related to depression and noted the claimant's problems with concentration were improving with medication management." The ALJ also found that Dr. Haskell's opinions were "consistent with the longitudinal record and balance the claimant's objective and subjective findings." Based on Dr. Haskell's opinions, the ALJ found that Snay could understand and remember simple instructions

and execute simple tasks consistently to complete a work schedule.

As Snay points out, however, Dr. Haskell's opinions were NOT based on the longitudinal record. She did not review Snay's records from June of 2010 through February of 2012. She emphasized Dr. Hancock's first opinion, from May of 2010, but did not see Dr. Hancock's second opinion, the letter from September of 2010, or her third opinion, the evaluation from February of 2012. Dr. Haskell also did not see LCSW Hammond's opinion from January of 2011. Therefore, the ALJ erred in his evaluation of Dr. Haskell's opinions, and her opinions do not provide substantial evidence to support the ALJ's residual functional capacity assessment.

Because the ALJ relied on Dr. Haskell's opinion alone to support his residual functional capacity assessment, that finding cannot be sustained. Although Snay also challenges the ALJ's evaluation of the opinions provided by his treating sources, those issues need not be resolved here as the case must be remanded for further proceedings.

B. Credibility

Snay contends that the ALJ improperly assessed his credibility as to the severity of his symptoms. Because the case must be remanded for further proceedings, that issue, along with the questions about the weight to be afforded the opinions of

Snay's treating sources and the state agency consultative physicians, can be addressed in that context.

C. Residual Functional Capacity

A residual functional capacity assessment determines the most an applicant for benefits can do despite his limitations. 20 C.F.R. § 404.1545(a). The Acting Commissioner's residual functional capacity assessment, as found by the ALJ, is reviewed to determine whether it is supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012). As is explained above, the ALJ's residual functional capacity finding is not supported by substantial evidence.

## Conclusion

For the foregoing reasons, the applicant's motion to reverse and remand (document no. 8) is granted. The Acting Commissioner's motion to affirm (document no. 11) is denied.

The case is remanded under Sentence Four for further proceedings.

SO ORDERED.

*[signature: Joseph A. DiClerico, Jr.]*
Joseph A. DiClerico, Jr.
United States District Judge

June 12, 2014

cc: Raymond J. Kelly, Esq.
    T. David Plourde, Esq.